This is a theme motion issue, and there are two issues that seem to me not subject to the abuse of discretion standard that are isolated and seem to require clear reversal. The first is that we had asked for two types of costs in this case. One of the costs permitted in the Fair Labor Standards Act called litigation costs. And it's not quite clear, but the And we're not objecting to that, although, as we pointed out in brief, there seems to be some inconsistencies. It was the statutory costs under Title 28 that we also asked for that the Court seems to have ignored. Can I ask you something about that? Generally, when people want the regular old statutory costs, you file a cost bill. Correct. And it goes through the normal old process and out it comes. If you want special litigation costs, that usually goes to the judge and he decides do you get them or not. Is that what's going on here? Do the judges rule on the part the judges usually rule on and not really make an opinion one way or the other on the statutory costs? They're just going the normal route? Or did he actually say you don't get your statutory costs? It's unclear what he did. Because he noted in his memorandum that the defendants had objected on the grounds that there was no judgment at the time the costs were filed. But that was also part of the agreement that when we settled it, we'd file a motion for fees and costs. And when the judge had entered his order on the fees, the clerk entered it as a judgment, which would have made that cost bill appropriate at that time. So maybe it's just a clarity issue kind of thing. I agree. I don't mean just from your standpoint. It's more than clarity. We don't get paid. And to be consistent with what the Court found below, there's some argument left, I suppose, that some of these costs, if you're going to be consistent with what the judge found, should have been disallowed given his theories. And that's something that ought to be clarified. But I think we're entitled at least to have remand on that. Let me ask you about the Lodestar. It looked like to me the judge just accepted your Lodestar. Can he do that? Is there anything wrong with him doing that? No, but I don't really think that's what he did. We had a Lodestar number of 1,100, roughly, hours, because we reduced it by almost 25 percent from what we've incurred. Well, I understand that. The issue with the reduced was that's another issue. I'm not keen that you have to – I know some of our cases say you have to have a Lodestar, but I think there are other cases that say you just have to be reasonable. But you did go with a Lodestar, and I'm not being critical of that. Some of our cases almost force you into it. But once you get the Lodestar, then we talk about the decreases. And he doesn't say in his order why it's $100,000 that he's giving for this. Now, I think I know why, but that's just speculation. He had a whole bunch of cases from Ninth Circuit where no one's ever got more than 1.5. And if you multiply what you achieved in this case times 1.5, you come up to almost $100,000, and it looked like it was rounded off. Now, he didn't say that, but those cases are in there, and it seems that's what he did. Now, I take it you're saying he didn't say at all why he rounded it to $100,000. He didn't give any reasons at all. Is that correct? That's correct. But, Your Honor, he cites one Lanham Act case for the proposition, Your Honor, has expressed that the ratio is 1.5. But that Lanham Act case, which is this Court's case, was very clear that they were dealing with Lanham Act cases in terms of ratios, not Fair Labor Standards Act cases where workers sometimes are entitled to very small increments of money. So he didn't say that, but he did say, didn't he, that he couldn't find any Ninth Circuit case where it's been over 1.5 above the recovery, although there was some in other circuits. And there's also the Bonnet case in this circuit. So I think there are enough cases where it's above that, but, again, I want to be clear. He only cited a Lanham Act case where the principles are considerably different for these kinds of fee. But, Your Honor, it's also correct that a basic problem with the way he approached this is we submitted the Lodestar amount, and in this order he says he's got three problems with it. One is this paralegal thing. The other is some discrepancies in attorneys' fees, I mean, the discrepancies in the deposition times. And I concede that he could have said, look, I'm going to reduce it by 15, 20, 20, 30 hours and reduce the Lodestar if he'd done that. But we don't know what he did. And then he says the amount is unreasonable, which kind of overwhelms everything else. I mean, I don't have a whole lot of difficulty figuring out what I think he did. And I don't know why he should have to go back to a number of hours and decrease it incrementally. We'll take 22 hours off of that and 14 hours off of that. And, by the way, the total amount is just outrageously large as compared to the results. So I'm taking it all back to $100,000, which I think is what he did. So I'm not sure that I'm so puzzled as to what the district court's reasoning was. He could have spelled it out more clearly, but it's really hard to figure out. Well, the problem is, is that if you use a Lodestar amount, he at least has to express – I think the Court has to express some Lodestar amount from which you then apply the Kerr factors, which is what I think Your Honor is flattering. I think he did. I mean, I read it the same way Judge Wallace did. I think he took your calculations and said, okay, we'll start there. That's just unfathomable in his mind with regard to the comparison with results. And that amount – I mean, you can trim out the travel and you can trim out the paralegal. But those are just going to be overwhelmed by bringing the whole number down to what the district court thought was a reasonable ratio as against the result achieved. So I'm not sure why we should make him do those first calculations if in the end it's all going to come down anyway because of the comparison with the results achieved. Now, you can argue whether that dramatic reduction based on results received is reasonable or not, but if you would accept that, then why would he have to do the calculations for the first three? Well, there was a third factor he looked at in terms of Lodestar. He said you've got to eliminate the Pulte hours, the defendant who was dismissed, and we'd already done that. So it's unclear whether he thought we had done that or not because he said you have to eliminate them, and we'd eliminated some 300 or 400 hours based on Pulte. Let me address the heart of the case, which I think Your Honor is focusing on, is what are the results achieved here? The district court for some reason thought that we had achieved what he called a fair result for two reasons. One is he said that we had alleged or sought a significantly increased amount in our Pulte hours.  And he said that we had achieved a substantial amount in our Pulte hours. Now, there's another complaint. He says the damages recovered were substantial. Every one of these low-wage workers who was left got basically everything they were entitled to, and that's reflected in the settlement stipulation where there's an estimate of roughly $11.50 an hour, an estimate of the number of hours of overtime they worked, and he's saying, well, that's only a fair job. The ratio is still five times more than the recovery, and you sought 180,000 and got 65,000. Those are issues that he can look at, aren't they? That's also incorrect. I'm sorry, Your Honor, because what the judge said was, of course, that the damages recovered were substantial, but was only a small fraction of the amount sought in the complaint. The complaint doesn't mention an amount. It says this is a collective action. All those folks will opt in on title of remedy. It's true that Burnham identified 500 people who worked for it at some time. Many of them chose not to opt in, so the case never didn't involve them once they chose not to opt in. But let's go back to that number. The number the settlement stipulation reflects exactly what happened. The parties estimated how much they were owed, how much they got. And that's tab 12 in the record. And although counsel says in their memorandum that we started negotiations on that day we settled in front of Magistrate Leen and 180,000 and ended up with 60,000, A, that wasn't an affidavit. It was simply her representation in a memorandum, which is not admissible. Number two, those are settlement discussions. And number three, to say that we start out with a high number and end up with another number, which all parties agree upon, doesn't suggest that we don't receive a fair result. And I think it's quite plain that we did receive, for at least the workers left, a very substantial result, and you're correct. Theoretically, the universe of workers who could have opted in was much greater, but a complaint simply was a collective action under the Fair Labor Standards Act. Those workers who opt in get a remedy, and for the workers left, we got well more than a hundred we actually got more than 100 percent of what they were owed. And finally, before I stop to leave a little time for rebuttal, fundamentally we achieved something else here, and I think that's important to me and I think important to the Court. Burnham agreed in the settlement stipulation to comply with the law, to pay people over time. They expressly said that they would create a memorandum, give it to their workers and tell them what the law was after that. And we're proud of that, and we think that's part of what we achieved here, which is important. But I'd like to reserve the rest of my time for rebuttal. Okay. Good morning, Your Honors. Jeff Silvestre on behalf of the Burnham parties who are the appellees in this case. We are dealing with an abusive discretion standard, and it's clear that the judge had wide latitude based on his superior knowledge of the court and of the case to make these reductions. He applied the law correctly, and his decisions were supported in the record. What you didn't hear from appellant's counsel, but was brought forth very clearly to the district court, and he noted in his record, was that this case was never just about 15 employees that got $4,000 each. When they started this case, it was to try to unionize Burnham Painting. That was the demand they made from the beginning. They started their complaint with a class action. They started their complaint by suing the home builder. They started by asking for an opt-in. They didn't get the class certification. They didn't, they weren't able to sue Pulte Homes. That was dismissed on summary judgment. They did try to have an opt-in, and they had 569 potential people. They got none. They got zero people to opt into this case. All 15 that remained at the end were people that had signed up before the opt-in provision started. They made a demand on Burnham early in the case and said, this case will not settle unless you sign a union contract. What Appellant's counsel did was take a very, very aggressive litigation strategy. And it's a strategy that, in the end, failed. But just because they took an aggressive strategy doesn't mean that all $325,000 that they spent pursuing it gets shifted to Burnham. They want to have a union contract. Roberts. Let me ask you a technical question. Okay. If indeed the district court is supposed to, if it is, supposed to decide on a Lodestar first, under its Lodestar part of its case, it doesn't. It doesn't look to me. What it says in terms of the Lodestar, it says they claim a Lodestar of so much. And then it says, yes, but, the court says, but they're billing for travel costs and these guys come from California and you should have gotten yourself a Nevada lawyer. Correct. Okay. And it says the Pulte matter should be eliminated and also some stuff on depositions and sectors should be eliminated. But it never comes out and says what the Lodestar should be there for. It never says, did it take off half because these guys came from California? Is that where it started? Is that what is Lodestar, or what was it? Do you know? The judge's order is not clear and it says exactly what you said. But the judge under the case law doesn't need to set a Lodestar amount. Okay. Let's forget that for a second. If he did, he didn't, did he? Well, he did in a sense in that he used burner, he used appellant's own numbers. And then he did make reductions and if you look at it. He didn't use it. He says they claim it. Yes. He says they claim it. Excuse me. He never, he's never said and I accept that Lodestar with a few adjustments. He said they claim it and the defendant says that's a lousy, that's a lousy claim. I read his order. Again, is that what he said? I read his order more in between the lines. I think he was finding a Lodestar. I don't think he used the words, I'm finding a Lodestar. He clearly understood what a Lodestar calculation was. He understood he had a number. What was the Lodestar he found then? Tell me. I don't have the number. It was, I think it was, the Lodestar was about 320,000. I know what number they claim. Yes. That's what he was using. And he says, but that's no, but under the Lodestar, he says there are lots of things wrong with that and then he goes to the Kerr factor. So I'm talking about the Lodestar only at this point. Well, pursuant to what he put in the order, he never said the words, I'm finding a certain Lodestar. So he never actually decided one, did he? I don't think that, you know, if you read his opinion, it's not in there. I think his opinion can be read differently to say that I did find a Lodestar, but I'm not even sure that a Lodestar is required. The cases say that typically. Okay. But if he did have to find a Lodestar, he says, okay, I'm not finding a Lodestar and here are the Kerr factors. Right. But, yes. And you say that's okay. I understand. I think that's okay. But if it's not okay, he should have done something different, no? Correct. Okay. Thank you. But I think what he did, and you talked about, the Court talked about the, you know, the reductions that have to be specific numbers. He did look at two big factors, and he looked at the fact that they stalled this case. They were trying to unionize Burnham. This case did not settle until the appellants removed their demand for a union contract. And when they finally said at the very end of the case, we don't want a union contract, the case settled almost immediately for $60,000. The fact that they spent $325,000 or more getting to that point on their failed strategy is one of the reasons, and I think one of the main reasons, the judge decided that these fees and time and expense were a reason. Well, they've offered up to us that much of the time was expended with depositions of every single one of the potential claimants, and that would eat up a whole lot of time, too. And that wouldn't have been something they were doing in an effort to unionize. That's something in response to your client's desire to depose everybody. Well, our clients had no choice in the matter. We were trying to settle the case. There was nothing for our clients to do. They couldn't settle the case. Actually, one of the things, seeing an excellent strategy, because the number of claimants just melted like crazy, but that's not something we can attribute to some desire on their part to stall the litigation. It seems to me that would take a whole lot of time all by itself. Well, the depositions were timely. I mean, they took time. There were plaintiffs, but those plaintiffs had to be deposed to find out what had happened. Had they gone to settlement and done at the end of the case what they did, if they would have started at the beginning, they wouldn't have spent $400,000 on this case. Let me ask you about the travel costs. There seems to be a feeling on the part of Judge Jones that they – that your adversary should have been somebody from Las Vegas, and that it's not fair to hire Los Angeles lawyers. Don't they have a right to choose their own lawyer? I think they do, and we concede in our briefs they have the right to choose any lawyer they want, but that doesn't mean that those fees are necessarily reasonable. They couldn't point out or explain why they had to choose counsel from out of State that would increase the cost. There are plenty of competent counsel in Las Vegas who could have handled this case. What is there in the record that I could point to that said there's a competent labor counsel in Las Vegas of the quality that could meet your firm? The – what's in the record is the fact that it's their burden to prove that. It's their burden to establish that there isn't any. It's not Burnham's burden to establish that they could have found somebody. The case law is very clear that it's appellants' counsel's obligation to say and show that, look, we had to do this case ourselves. Nobody in Las Vegas could do it. And we put that in the record and asked them to prove that, and they never did. They came up with no evidence. They just said we need to do it. So what you're saying is that you have a right to choose whatever counsel you want to as long as they're in the city where the case is filed, and if you choose to choose another lawyer that you think is more competent, you can't get your costs in travel? No. I think that if you can establish under the case law, if you can establish that nobody else was available in Las Vegas, then you have a much better argument that the fees for out-of-State counsel are reasonable. Was that to test whether somebody is available or that you think somebody else can do a better job and you retain them? I'm just wondering where this is leading us. There's a lot of regional firms now, and people do like to have them. They have the backup that can do it. Unfortunately, their hometowns are not in Las Vegas or Calexico. They're in Los Angeles or San Francisco. And the idea of penalizing, because you go to that lawyer, I could see if it was from Miami, that would be a problem, but I'm just a little troubled by requiring local counsel. I don't think there's any preclusion against it. I think there's an opportunity under the case law for you to choose your counsel and then establish that that counsel's fees were reasonable, and that perhaps going out-of-State was the most reasonable alternative. The problem is that appellant's counsel never did that. When given the opportunity, they didn't. Okay. So what you're saying is really a burden of proof issue that the one who demands the fees has to demonstrate it was reasonable for the client to choose this particular law firm, even though it was in the out of the Las Vegas and in Los Angeles. Correct. And they did not do that. To sum up, the reason I think that the judge reduced the fees as he did was that he didn't like the stall tactics, and at the end, the results just weren't that good. He understood that $4,000 per plaintiff was a fair result, and he said that's fair. But $60,000 doesn't justify $325,000 in fees. And he noted that, you know, while they did get these fees for the 15 plaintiffs, the wages, they were asking for much, much more. Well, they did get an understanding for the future as well. So it's not just $60,000. Presumably, this problem is not going to reoccur because the company will comply with the law in the future. Correct. What's the dollar value of that? I think that's to the judge's discretion. That was not something that was put in the record, though. That was not something that was argued. It's not hard to figure out, but it's probably pretty high. I mean, if you don't have a boom time in Las Vegas, you may not have scads of overtime the way that you did during some years. And yet, they got a whole lot of workers, and if all the workers get paid the overtime, just as if the entire group had opted in, the amount here would have been substantially larger. Isn't there a significant monetary value to that commitment? I think there is likely monetary value, but I think the judge was able to factor that in and decide what was reasonable. And this is in his discretion. He's the one that has the superior knowledge of the case. He watched it progress through. He watched counsel's arguments. He watched how the case progressed and how the settlement progressed. And he watched how the case settled immediately when the union demand was lifted. Thank you. Thank you. Mr. Rosenfeld. Judge Wallace, I think we met our burden with respect to why we were chosen because of our extensive experience in wage and hour, FLSA, and immigrant worker litigation. Was it in the record? I'm just troubled by this idea of you can't get a lawyer that's 150 miles away or something. Did you put something in the record as to why it was reasonable to choose a Los Angeles firm instead of a Las Vegas firm? What we put in the record was our extensive experience as a law firm in handling these cases. We put nothing in the record about who was or wasn't available in Las Vegas. Okay. But just one final point is that counsel still hasn't addressed the issue that we didn't get the judge to award fees on fees, never addressed that issue, and that's a substantial amount. Thank you. Could you stay there just for a second? I just want to make sure of this. We had the one, the senior lawyer being involved too much. As I understand, the senior lawyer is the one that you retained specifically for this litigation. That's what they're talking about, the senior lawyer? I had absolutely no idea what was going on here because all the district court said was you use senior lawyers for the majority of the work. I concede I'm the senior lawyer. Cynthia Connors, who was a Las Vegas lawyer at the time we began the litigation, she lived there, was like an 18-year lawyer with an extensive background in this kind of work. Now, he may have been referring to Cynthia Connors, who later moved back to California. And then there were others in our firm who had 10, 12, 15 years of experience who were doing a lot of the litigation. But there's also a certain amount, a substantial amount of efficiency when you use folks who have been around and have done this kind of work. But I don't know who you're referring to. There's this fee application for getting fees. I don't see where the district judge has ruled on that yet. Did you see it in there? We saw no reference to it at all. And then the reduction of litigation expense and court costs. I didn't – I can't figure out what he did with that. What happened to court costs? You're entitled to your costs, but I don't see where that was decided. We don't see whether the 28 – Title 28 costs were decided. He did decide the litigation costs. And I want to be careful. I want to concede something, yours, that his granting of that $21,000 seems a little inconsistent with his rulings about using out-of-state counsel because the Fair Labor Standards Act litigation costs that we asked for included our travel costs. Yeah. And I'm not asking to be reversed, although I think to be consistent and honest with this Court, I have to say that is inconsistent. And if the Court remands a thing, I suppose it would be fair and honest to tell the district judge, if you want to reduce the $21,000 on that same rationale, you may consider it, because I think it is inconsistent. And I wouldn't want to mislead the Court in that regard. Thank you. Thank you. We thank both counsel for the argument. The case just argued is submitted.
judges: Wallace, Fernandez, Clifton